UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH GOLDSTEIN,

                              Petitioner,

          - against -

TIMOTHY LAFFIN,

                              Respondent.

13 Civ. 1856(CS)(PED)

REPORT AND
RECOMMENDATION

TO:    THE HONORABLE CATHY SEIBEL,
       UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

Proceeding *pro se*, Joseph Goldstein ("Petitioner") again seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 from his April 13, 2007 Sullivan County conviction (Ledina, J.).[1] Petitioner was convicted, upon pleas of guilty, of two counts of reckless endangerment in the first degree and one count of aggravated unlicensed operation of a motor vehicle in the first degree, and sentenced to two concurrent terms of three and one-half to seven years imprisonment on the reckless endangerment convictions, and to run consecutively, a term of one and one-third to four years imprisonment on the motor vehicle conviction.  This matter comes before me pursuant to an Order of Reference dated August 1, 2013.  (Dkt. 9.)  For the reasons set forth below, I respectfully recommend that this petition be **DISMISSED AS TIME-BARRED.**

## II.  BACKGROUND[2]

### A.    Crimes and Indictment

---

[1] As discussed below, Petitioner's earlier federal *habeas* petition, challenging the same conviction, was dismissed without prejudice in Goldstein v. Hulihan, 9 Civ. 6824 (CS)(PED).

[2] Because I recommend that the petition be dismissed as time-barred, I provide only summary descriptions of the criminal offenses and procedural history.

On April 5, 2006 in the town of Liberty, New York, Petitioner drove his vehicle recklessly while his license was suspended or revoked.  Among other things, Petitioner drove through a construction zone at a high rate of speed, forcing a car off the road and requiring two flagmen to jump out of his way.  A grand jury indicted him on the following offenses:

(1)     2 counts of reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25;

(2)     1 count of aggravated unlicensed operation of a motor vehicle in the first degree, in violation of N.Y. Veh. & Traf. Law § 511(3)(a)(ii);

(3)     2 counts of failure to stop at a stop sign, in violation of N.Y. Veh. & Traf. Law § 1172(a);

(4)     1 count of failure to comply with a police officer, in violation of N.Y. Veh. & Traf. Law § 1102;

(5)     2 counts of speed not reasonable and prudent, in violation of N.Y. Veh. & Traf. Law § 1180(a);

(6)     3 counts of failure to yield right of way while making a left turn, in violation of N.Y. Veh. & Traf. Law § 1141;

(7)     2 counts of reckless driving, in violation of N.Y. Veh. & Traf. Law § 1212;

(8)     2 counts of failure to comply with a flagman, in violation of N.Y. Veh. & Traf. Law § 1102;

(9)     1 count of operation of a motor vehicle on a public highway while using a mobile phone, in violation of N.Y. Veh. & Traf. Law § 1225-c;

(10)    1 count of speed 70 miles per hour in a 40 mile per hour zone, in violation of N.Y. Veh. & Traf. Law § 1180(b);

(11)    1 count of speed 70 miles per hour in a 40 mile per hour school zone, in violation of N.Y. Veh. & Traf. Law § 1180(c);

(12)    1 count of speed 80 miles per hour in a 55 mile per hour zone, in violation of N.Y. Veh. & Traf. Law § 1180(b);

(13)    1 count of driving on the shoulder, in violation of N.Y. Veh. & Traf. Law § 1131;

(14)    2 counts of passing in a no passing zone, in violation of N.Y. Veh. & Traf. Law § 1126; and

(15)    1 count of speed 80 miles per hour in a 30 mile per hour zone, in violation of N.Y. Veh. & Traf. Law § 1180(b).

(Indictment (attached to Resp't's Decl. in Opp'n to Pet. for a Writ of Habeas Corpus ("Resp't's Decl.") (Dkt. 14), at Ex. A).[3])

---

[3] All exhibits cited herein are attached to Respondent's Declaration (Dkt. 14).

B.      **Arraignment, Guilty Plea, and Sentence**

Through counsel, Petitioner appeared and pled not guilty on August 14, 2006.  (Aug. 14, 2006 Tr. (Ex. A).)  On August 16, 2006, at a conference set for a bail application, Petitioner accepted a plea bargain.  In exchange for the prosecutor's recommendation of concurrent sentences of three and one-half to seven years imprisonment on the reckless endangerment convictions and one and one-third to four years imprisonment on the aggravated unlicensed operation conviction, Petitioner pled guilty to those offenses and executed a waiver of his rights to direct and collateral appeals.  (Aug. 16, 2006 Tr. (Ex. A).)  Bail was granted and Petitioner was released two days later.  (Aug. 18, 2006 Tr. (Ex. A).)

Through counsel, Petitioner moved to withdraw his guilty plea.  The court denied the motion on February 27, 2007.  (Ex. B.)  Thereafter, Petitioner failed to appear at his scheduled sentencing.  The court revoked bail, issued a bench warrant for Petitioner's arrest, and re-scheduled the sentencing.  (Mar. 13, 2007 Tr. (Ex. A); Bench Warrant (Ex. A).)  Petitioner was later located and appeared for sentencing on April 13, 2007.  He was arraigned as a second felony offender and sentenced.[4]  However, the court did not impose the sentence negotiated at the time of Petitioner's guilty plea.  Due to Petitioner's earlier failure to appear, the court sentenced Petitioner to concurrent terms of three and one-half to seven years imprisonment on the reckless endangerment convictions, and a term of one and one-third to four years imprisonment on the aggravated unlicensed operation conviction, but ordered the unlicensed

---

[4] Petitioner was convicted in federal court on July 14, 1997 of conspiracy to pass counterfeit currency and sentenced to six months home confinement and three years probation. He was convicted in federal court on November 3, 1997 of counterfeiting and sentenced to 36 months probation.  On May 18, 2001, he was convicted in federal court of bank fraud and sentenced to 14 months, 24 days, time served, and 24 months supervised release.  (See 2d Felony Offender Statement (Ex. A).)

3

operation sentence to run consecutive to the others.  (Apr. 13, 2007 Tr. (Ex. A).)

## C.    <u>Direct Appeal</u>

Through counsel, Petitioner, appealed his conviction to the New York State Appellate Division, Third Department.  The conviction was affirmed on May 22, 2008.  <u>People v. Goldstein</u>, 857 N.Y.S.2d 817 (App. Div. 2008).  Petitioner was granted leave to appeal to the New York State Court of Appeals on August 27, 2008.  <u>People v. Goldstein</u>, 11 N.Y.3d 743 (2008).  On April 30, 2009, the New York State Court of Appeals affirmed the conviction. <u>People v. Goldstein</u>, 12 N.Y.3d 295 (2009).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.  (<u>See</u> Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶ 12 (Dkt. 1).)

## D.    <u>First Federal *Habeas Corpus* Proceeding</u>

Petitioner filed an application seeking federal *habeas* relief in this district in 2009.  That petition was dismissed without prejudice as a "mixed" petition that contained both exhausted and unexhausted claims.[5]  <u>Goldstein v. Hulihan</u>, No. 09 Civ. 6824(CS)(PED), 2011 WL 4954038 (S.D.N.Y. Oct. 18, 2011).  Petitioner moved for reconsideration of this decision, which was denied, and then sought leave to amend his dismissed petition, which was also denied.  <u>Goldstein v. Hulihan</u>, No. 09 Civ. 6824(CS)(PED), 2012 WL 1438251 (S.D.N.Y. Apr. 25, 2012).  The docket in that matter reflects that Petitioner appealed these decisions and the Second Circuit has dismissed those appeals.

---

[5] As Your Honor is aware, after my preliminary review revealed that the petition was a "mixed" petition, I held a conference to determine whether a stay of the *habeas* proceedings, or some other procedural disposition, was appropriate in that matter.  During the conference, Petitioner disputed that the petition was "mixed" and informed the Court that he would not pursue state actions in order to exhaust any claims.

4

**E.      First Motion to Vacate the Judgment of Conviction**

By application dated October 26, 2011, Petitioner moved in state court to vacate the

judgment of his conviction pursuant to Section 440.10 of the N.Y. Criminal Procedure Law.

(Ex. H.)  The trial court denied the motion on December 16, 2011.  (Ex. K.)  Petitioner moved

for re-argument (Ex. L),[6] and then sought leave to appeal the trial court's decision, (Ex. O).  The

Third Department denied leave to appeal on February 6, 2012.  (Ex. P.)

**F.      Second Motion to Vacate the Judgment of Conviction**

By application dated February 9, 2012, Petitioner moved a second time in state court to

vacate the judgment of his conviction pursuant to Section 440.10.  (Ex. Q.)  The trial court

denied the motion on January 8, 2013.  (Ex. T.)  Petitioner filed a "motion to renew and

reargue," (Ex. U),[7] and then sought leave to appeal the trial court's decision, (Ex. V).  The Third

Department denied leave to appeal on March 12, 2013.  (Ex. W.)

**G.      Second Federal *Habeas Corpus* Proceeding**

By petition dated March 14, 2013, Petitioner again seeks a federal writ of *habeas corpus*

from his 2007 state conviction.  Goldstein v. Laffin, No. 13 Civ. 1856(CS)(PED) (Dkt. 1).

Respondent opposes the petition.  (Dkts. 13–14.)  Petitioner has filed a reply.  (Dkt. 18.)

### III.  DISCUSSION

**A.      Applicable Law**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

---

[6] The record does not reflect the outcome of the motion for re-argument.

[7] The record does not reflect the outcome of the motion to renew/reargue.

5

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).

Under AEDPA, a federal *habeas corpus* petition is subject to a strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

**B.    The Petition is Untimely**

     **1.    *Section 2244(d)(1)(A)***

"[A] petitioner's 'conviction be[comes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].'" <u>Williams v. Artuz</u>, 237 F.3d 147, 150 (2d Cir. 2001) (quoting <u>Ross v. Artuz</u>, 150 F.3d 97, 98 (2d Cir. 1998)).  Here, the New York State Court of Appeals affirmed Petitioner's conviction on April 30, 2009.  <u>People v. Goldstein</u>, 12 N.Y.3d 295 (2009).  Petitioner's deadline to file for a writ of *certiorari* in the United States Supreme Court fell ninety days later, on July 29, 2009.  28 U.S.C. § 2101(d); Sup. Ct. R. 13(1).  Under Section 2244(d)(1)(A), Petitioner's one-year window to file his federal *habeas* petition expired on July 29, 2010.  Absent tolling, then, his March 2013 petition is untimely.

i. **Statutory Tolling**

Although it is well-established that a state court motion to vacate a conviction tolls AEDPA's statute of limitations, <u>see</u> § 2244(d)(2); <u>Bennett v. Artuz</u>, 199 F.3d 116, 119–20 (2d Cir. 1999), it is equally clear that such motions do not "reset the date from which the . . . statute of limitations begins to run." <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000).  Accordingly, Petitioner's motions to vacate, both of which were filed long after the July 29, 2010 deadline had passed, did not toll the limitations period.  In addition, Petitioner's first application seeking a federal writ of *habeas corpus* "is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2) . . . [and] therefore d[oes] not toll [AEDPA's] limitation period." <u>Duncan v. Walker</u>, 533 U.S. 167, 181–82 (2001).  Accordingly, there is no statutory basis for tolling the limitations period.

ii. **Equitable Tolling**

Petitioner contends that the statute of limitations should be equitably tolled.  (<u>See</u> Dkt. 5, at 1, 4; Dkt. 6, at 3–7; Dkt. 18, at 9–10.)  Respondent maintains that equitable tolling is not

warranted.  (See Resp't's Mem., at 18–19.)  I agree with Respondent.

The Supreme Court has held that AEDPA's one-year statute of limitations period is subject to equitable tolling, appropriate where a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time[.]" Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id.; see also Valverde, 224 F.3d at 134 (the applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

Here, Petitioner maintains that he "exercised due diligence constantly" and points to his numerous state and federal court filings.  (Dkt. 6, at 3.)  However, Petitioner fails to account for the circumstances which led to the dismissal of his first *habeas* petition.  Petitioner deliberately chose to pursue a mixed petition after he was on notice that it contained potentially unexhausted

8

claims.  Had Petitioner accepted the Court's invitation to seek a stay of his first petition, he would not be confronted with the timeliness hurdle he must now overcome.  Moreover, in denying Petitioner's motion to amend his first *habeas* petition, Your Honor specifically found that Petitioner's "tactics" in, among other things, deliberately foregoing the opportunity to exhaust the unexhausted claims in his petition, were "dilatory and otherwise abusive" of the writ. Goldstein v. Hulihan, No. 09 Civ. 6824(CS)(PED), 2012 WL 1438251, at *1 (S.D.N.Y. Apr. 25, 2012).  Petitioner's litigation tactics do not reflect the type of diligence required to support equitable tolling.

Petitioner also argues that extraordinary circumstances prevented him from timely filing his instant petition.  Specifically, he maintains that both Your Honor and I failed to inform him that the statute of limitations would present a procedural obstacle after his first petition was dismissed.  (See Dkt. 6, at 4–5.)  Petitioner's argument, however, falls far short of establishing the kind of "rare and exceptional" circumstance that would warrant an equitable toll.  McGinnis, 208 F.3d at 17.  It is clear that "a lack of legal knowledge cannot excuse a delay in filing a petition."  Wilson v. Bennett, 188 F. Supp. 2d 347, 354 (S.D.N.Y. 2002); see also Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004) ("*pro se* status does not in itself constitute an extraordinary circumstance meriting tolling"); McGinnis, 208 F.3d at 18 ("*pro se* status . . . does not merit equitable tolling"); Strano v. Warden, No. 11 Civ. 1810(AWT), 2014 WL 358987, at *3 (D. Conn. Jan. 30, 2014) (collecting cases noting that "[t]he Court of Appeals for the Second Circuit and district courts within this circuit are consistent in holding that neither a petitioner's *pro se* status, nor his unfamiliarity with the law, nor his lack of access to legal materials/assistance constitute an extraordinary circumstance that provides a basis to toll [AEDPA's] statute of limitations"); see also, e.g., Madison v. Hulihan, No. 09 Civ. 337(DLI),

2012 WL 1004780, at *4 (E.D.N.Y. Mar. 23, 2012) (citing <u>Artis v. Huliahn</u>, No. 09 Civ. 9893(BSJ)(JCF), 2010 WL 4668926, at *4 (S.D.N.Y. Nov. 12, 2010) and <u>Madison v. Hulihan</u>, No. 08 Civ. 5195(SCR)(LMS), 2009 WL 7028639 (S.D.N.Y. Dec. 22, 2009)) (finding no extraordinary circumstances where pre-printed court forms did not specifically reference AEDPA's statute of limitations period since petitioner could have discovered information about the deadline through other sources); <u>Oliphant v. McGill</u>, No. 08 Civ. 1728(WWE), 2011 WL 4434206, at *5 (D. Conn. Sept. 21, 2011) ("petitioner's claim of a lack of knowledge of the statute of limitations period governing section 2254 petitions does not constitute an extraordinary circumstance warranting the tolling of the limitations period").[8]

In any event, Petitioner was (or should have been) on notice of the statute of limitations problem which now confronts him. This Court's January 14, 2011 Order, which set the stage for the February 23, 2011 hearing at which Petitioner declined to seek a stay of his earlier petition, cited three cases. One of those cases was <u>Zarvela v. Artuz</u>, 254 F.3d 374 (2d Cir. 2001), wherein the Court of Appeals acknowledged the procedural obstacles which confront *habeas* applicants who face dismissal of mixed petitions and specifically authorized district courts to stay mixed petitions in order to protect petitioners from the consequences of such dismissals.[9] Petitioner

---

[8] Copies of unreported cases cited herein will be mailed to Petitioner. <u>Lebron v. Sanders</u>, 557 F.3d 76 (2d Cir. 2009).

[9] If Petitioner had read <u>Zarvela</u>, he would have encountered the following:

> This case illustrates the procedural complexities confronting a prisoner who endeavors to exercise his statutory right to challenge a state court conviction by means of a petition to a federal district court for a writ of habeas corpus. First, he is required to exhaust in the state courts any constitutional claim he seeks to present in federal court. If he fails to realize that one or more of his claims has not been fully exhausted (a matter that is not necessarily obvious), he will be considered to have filed a so-called "mixed petition," in which event the district court must either

thus had the benefit of the Zarvela court's analysis when he rejected this Court's invitation to seek a stay. I also note that this Court's February 28, 2011 Report and Recommendation specifically observed that "[a]lthough a dismissal may preclude Petitioner from having his claims addressed by a federal court, Petitioner has rejected the procedure available to protect his rights." Goldstein v. Hulihan, No. 09 Civ. 6824(CS)(PED), 2011 WL 4954043, at *8 (S.D.N.Y. Feb. 28, 2011) (citing Zarvela, 254 F.3d at 280–83). Petitioner has not established extraordinary

---

send him back to state court or afford him the opportunity to abandon his unexhausted claims and proceed only with his exhausted claims. . . . If his petition contains unexhausted claims that he wishes to pursue, he must return to state court and exhaust these claims. Finally, he must make sure that he has complied with the one-year statute of limitations that AEDPA establishes for filing habeas petitions.

AEDPA contains a tolling provision that partially ameliorates these procedural complexities. The time during which a properly filed application for state court post-conviction relief is pending in state courts is exempted from the one-year limitations period. In addition, we have ruled that, under appropriate circumstances, the one-year period is subject to equitable tolling. However, the time that a habeas petition is pending in federal court is not exempted from the one-year limitations period.

254 F.3d at 378–79 (internal citations omitted). The Zarvela opinion goes on to observe:

. . . [T]he enactment of AEDPA has altered the context in which the choice of mechanics for handling mixed petitions is to be made. Before AEDPA, there was no statute of limitations. . . . With unlimited time, a prisoner could leisurely consider all possible federal claims and develop state court writs to exhaust them. After AEDPA, the prisoner has just one year. If he mistakenly comes to federal court too soon, *i.e.*, with one or more unexhausted claims, and does so late in the allotted one year, *a dismissal of his mixed petition risks the loss of all of his claims because the one-year limitations period will likely expire during the time taken to initiate state court exhaustion and return to federal court after exhaustion is completed.*

Id. at 379 (emphasis added) (internal citation omitted). Thus, Zarvela explicitly adopted the stay-and-abey procedure as a means of, among other things, ensuring that the federal *habeas* petitioner has the opportunity to present a fully exhausted petition to the federal court within the one-year time period provided by the statute. See id. at 380–82.

11

circumstances.[10]

Accordingly, equitable tolling of the statute of limitations is not warranted.  As discussed above, the petition is untimely under Section 2244(d)(1)(A).

**2.** ***Section 2244(d)(1)(D)***

Petitioner also argues that the starting point for AEDPA's statute of limitations should be calculated pursuant to Section 2244(d)(1)(D).  Under this section, the starting point is "the date on which the factual predicate of the . . . claims presented could have been discovered through the exercise of due diligence."  Petitioner maintains that he "discovered the 'factual predicate' of his [*habeas*] claim on February, [*sic*] 15–20, 2012," when he "learned of the facts of time/distance, and perception reaction time."  (Dkt. 6, at 1; <u>see also</u> Dkt. 18, at 2, 8–9.) Specifically, Petitioner asserts he learned these facts through: first, a "Google Maps" image which purportedly shows "the length of the road where Petitioner allegedly drove at a . . . high rate of speed . . ." and which indicates that "the road is 1.3 miles at length and would take 5 minutes to travel;" and second, "Forensic Aspects of Driver Perception and Response," by Paul

_____

[10] Petitioner also asserts that "the Court committed prejudicial error and contributed to the delay of Petitioner's filing," which he argues constitutes an "extraordinary circumstance . . . [that] should qualify for equitable tolling."  (Dkt. 6, at 6.)  Among other things, Petitioner complains that the Court "recharacterized" his first *habeas* petition as one containing "non-federal issue[s]" to one that was "cognizable," (<u>id.</u> at 4–6); "rubber stamp[ed] a Magistrate's R&R," (<u>id.</u> at 6); and "ignored" the fact that Petitioner later exhausted his previously unexhausted claims in state court when it denied his motion to amend, (<u>id.</u> at 5; <u>see also</u> Dkt. 18, at 9–10).  These arguments do not describe extraordinary circumstances but appear instead to simply manifest Petitioner's disagreement with the Court's decisions with respect to his first *habeas* petition.  (<u>See</u> Dkt. 18, at 10 (suggesting that this Court "convert the instant Petition into a relief from judgement motion under F.R.C.P. 60(b) . . . and have the Court reconsider its ruling").)  To the extent that Petitioner argues that equitable tolling is warranted because his "circumstances are identical" to <u>Zarvela v. Artuz</u>, 254 F.3d 374 (2d Cir. 2001), (<u>see</u> Dkt. 6, at 7; Dkt. 18, at 10), Petitioner misconstrues that decision.  In any event, Petitioner was on notice of <u>Zarvela</u> when he was given an opportunity to seek to stay his first *habeas* petition or to excise his unexhausted claims.  (Dkt. 11.)  Petitioner deliberately chose to do neither.

Olson, a book about driver reaction time that was published in 1996 and that came to Petitioner's attention after he read a 2006 case from the District of Maryland, Moore v. Matthews, 445 F. Supp. 2d 516, 528 n.12 (D. Md. 2006), which cited the book.  (Dkt. 6, at 8; see also Dkt. 5, at 2–3; Dkt. 18, at 6–7, 10–16.)  I do not agree with Petitioner that this information constitutes a factual predicate for his *habeas* claims under Section 2244(d)(1)(D).

"The determination of the date on which the factual predicate for a habeas claim is first discoverable is a 'fact-specific' inquiry which requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered."  Rivas v. Fischer, 687 F.3d 514, 534 (2d Cir. 2012). The Second Circuit has held that the term "factual predicate" relates only to "'vital facts' underlying the claim," and has explained that those "facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts . . . or Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Id. at 535 (quoting McAleese v. Brennan, 483 F.3d 206, 214 (3d Cir. 2007)). Accordingly, "if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)."  Id. Moreover, "it should go without saying that a factual predicate must consist of *facts*. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim."  Id. (emphasis in original) (internal citations omitted); see also id. (quoting McAleese, 483 F.3d at 214 and noting that a petitioner may "'confuse[ ] the facts that make up his claims with evidence that might support his claims'"); id. (emphasis added) (quoting Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005) and noting that "'Section

2244(d)(1)(D) does not restart the time when corroborating evidence becomes *available*").  The Second Circuit also requires that, in order to determine if information relied upon as newly discovered could have, in fact, been discovered through the exercise of due diligence, a district court's "proper task . . . is to determine when a duly diligent person in [the] petitioner's circumstances would have discovered" that information.  Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000).

In this case, the information Petitioner asserts is newly discovered–*i.e.*, the map and the book–do not constitute factual predicates for his claims.  Petitioner argues that, given the road length and the standard reaction times published in book he discovered, the flagmen could not have had sufficient time to observe the make and model of the car, see the driver using a cell phone, and still manage to jump out of the way of the speeding car.  Additionally, Petitioner suggests that, given the road length, the second flagman was not in any real danger and had sufficient time to get out of the way of his vehicle.  (Dkt. 6, at 9–11.)  Even assuming that Petitioner's calculations are correct, it is clear that these claims could have been raised without the map or the book:  Petitioner could simply have asserted that he was innocent and that the flagmen were not accurate when they stated that Petitioner was driving fast and that they had to jump out of his way.  Petitioner's recent discovery of material which *supports* such claims is insufficient to establish an AEDPA starting point under Section 2244(d)(1)(D).  Rivas, 687 F.3d at 535; McAleese, 483 F.3d at 214.  In any event, a duly diligent person in Petitioner's circumstances could clearly have obtained this information earlier.  Wims, 225 F.3d at 190; see also, e.g., Haqq v. Yelich, No. 12 Civ. 2359(JFB), 2012 WL 5879121, at *4 (E.D.N.Y. Nov. 20, 2012) (quoting Duamutef v. Mazzuca, 01 Civ. 2553(WHP)(GWG), 2002 WL 413812, at *9 (S.D.N.Y. Mar. 15, 2002)) ("Under Section 2244(d)(1)(D), if the evidence could have been

14

obtained earlier, 'the date when the evidence was actually obtained has no effect on the AEDPA limitation period.'").[11]

Petitioner does not argue that another starting point under Section 2244(d)(1) applies. Accordingly, because he has not established a newly discovered factual predicate for his claims, Section 2244(d)(1)(D) is not applicable. I therefore recommend that the starting point for AEDPA's statute of limitations be calculated according to Section 2244(d)(1)(A). As discussed above, the petition is untimely under that provision and should therefore be dismissed.

**3.** _**Actual Innocence**_

Petitioner also contends that his actual innocence is a basis for this Court's review of his petition. The failure to timely file a _habeas_ petition may be excused where the petitioner presents "a credible and compelling claim of actual innocence." Rivas, 687 F.3d at 540; see also McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."). Such a showing requires the

---

[11] Petitioner's reliance on the 10th Circuit's decision in Easterwood v. Champion, 213 F.3d 1321 (10th Cir. 2000) is misplaced. (See Dkt. 6, at 1–2.) In that case, the petitioner presented an insanity defense at trial. The state produced one expert witness who testified that, in his opinion, the petitioner was not insane at the time of the crime and was competent to stand trial. Id. at 1323. Years after the petitioner's conviction became final, the 10th Circuit issued an opinion that discussed that expert. Specifically, it noted that at the time of the petitioner's trial, the expert suffered from a severe mental disorder. Id. The petitioner discovered this case several months after it was published, when the prison library received a copy of the reporter in which it was published. Id. The petitioner filed a _habeas_ petition and the 10th Circuit determined that the factual predicate for his new competency/insanity claim arose on the date that its case discussing the expert witness became available in hard copy in the prison library. See id. In contrast, the book that Petitioner in this case relies upon was published _before_ he pled guilty and _before_ he was incarcerated. Accordingly, the information in the book existed at the time of Petitioner's conviction. Moreover, unlike the 10th Circuit decision discussed in Easterwood, the Olsen book is apparently a general work and does not contain specific information relevant to Petitioner's conviction.

petitioner "to create sufficient doubt about his guilt that the habeas court will permit him to pursue his accompanying constitutional claims notwithstanding an otherwise applicable procedural bar." Rivas, 687 F.3d at 541; see id. (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)) (emphasis omitted) ("'the evidence must establish sufficient doubt about [the petitioner's] guilt to justify the conclusion that his [custody] would be a miscarriage of justice unless his conviction was the product of a fair trial'"). "Accordingly, to present a successful gateway claim of actual innocence a petitioner must present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. (quoting Schlup, 513 U.S. at 316).

The evidence of actual innocence "must be both 'credible' and 'compelling.'" Id. at 541 (quoting House, 547 U.S. at 521). To be "credible," the evidence must consist of "'new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.'" Id. (quoting Schlup, 513 U.S. at 324). To determine whether the new evidence is reliable, the *habeas* court must "consider[ ] it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." Doe, 391 F.3d at 161. To be "compelling," the evidence must reveal that, "'more likely than not, in light of the new evidence, no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt–or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" Rivas, 687 F.3d at 541 (quoting House, 547 U.S. at 538); see also McQuiggin, 133 S. Ct. at 1935 (quoting Schlup, 513 U.S. at 327) ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in

16

light of the new evidence.'"). The *habeas* court must "consider a petitioner's claim in light of the evidence in the record as a whole, including evidence that might have been inadmissible at trial." Doe, 391 F.3d at 162. Specifically,

> [T]he court must consider how reasonable jurors, fairly examining all of the evidence presented, would assess the petitioner's guilt or innocence. In evaluating the record as a whole, the habeas court may make its own credibility determinations as to both the new evidence and the evidence already in the record that may be thrown into doubt by the new material. With respect to the ultimate issue of innocence, however, Schlup does not permit the court to make an independent judgment of whether reasonable doubt exists, but instead requires a probabilistic determination about what reasonable, properly instructed jurors would do. This probabilistic analysis must determine not merely whether a reasonable doubt exists in the light of the new evidence, but rather whether it is more likely than not that no reasonable juror would have found the defendant guilty.

Id. at 163 (internal quotation marks and citations omitted); see also Rivas, 687 F.3d at 547 (quoting House, 547 U.S. at 554) (the evidence must be such that, had the jury heard all the evidence at trial, "'it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt'"). This standard requires the petitioner who raises a gateway actual innocence claim "'to make a stronger showing than that needed to establish prejudice.'" Rivas, 687 F.3d at 541 (quoting Schlup, 513 U.S. at 327). The "more likely than not" "standard is 'demanding and permits review only in the extraordinary case.'" Id. at 542 (quoting House, 547 U.S. at 538).

In this case, Petitioner argues that the untimeliness of his *habeas* petition should be excused via the actual innocence gateway and asserts that the Google Map information and the book discussing driver reaction time constitute both "credible" and "compelling" evidence for purposes of this gateway. Respondent contends that the evidence is neither credible nor compelling. (See Resp't's Mem., at 19–20.) I agree with Respondent and find Petitioner's

"new" evidence not compelling.[12]

First, the evidence establishes–at most–a credibility issue with respect to the flagmen's statements to police.  It is clear that such credibility evidence "does not compellingly point to [Petitioner]'s innocence" to the extent that <u>Schlup</u> requires.  <u>Rivas</u>, 687 F.3d at 546.  Absent some other "evidence, [which,] taken together, [would] raise[ ] doubts about [his] guilt," this evidence does not suggest that Petitioner is actually innocent of the crimes.  <u>Id.</u>; <u>see also, e.g.</u>, <u>Tuitt v. Martuscello</u>, No. 12 Civ. 1003(CS)(PED), 2013 WL 5508385, at *16 (S.D.N.Y. Oct. 3,

---

[12] To satisfy the "credible" prong of <u>Schlup</u>, the evidence must be both "new" and "reliable."  <u>Rivas</u>, 687 F.3d at 541 (citing <u>Schlup</u>, 513 U.S. at 324).  However, the definition of "new" remains an open question in this Circuit.  In <u>Schlup</u>, the Supreme Court required only that a claim of actual innocence be supported with "new reliable evidence" that was "not presented at trial."  513 U.S. at 324.  Other Circuits considering this component have split over whether the evidence must have been "unavailable" at the time of trial, or simply "not produced" at that time.  <u>Compare</u> <u>Gomez v. Jaimet</u>, 350 F.3d 673, 676 (7th Cir. 2003) (new evidence is evidence that was not presented to the fact finder at the time of trial); <u>and</u> <u>Griffin v. Johnson</u>, 350 F.3d 956, 963 (9th Cir. 2003) (same); <u>with</u> <u>Kidd v. Norman</u>, 651 F.3d 947, 953 (8th Cir. 2011) (new evidence is "evidence which was not available at trial through the exercise of due diligence"); <u>and</u> <u>Houck v. Stickman</u>, 625 F.3d 88, 93–94 (3d Cir. 2010) (new evidence is evidence not available at time of trial, except in situations where that evidence was not discovered due to the ineffective assistance of trial counsel).  The Second Circuit has not addressed this issue, although I note that in <u>Rivas</u>, it cited with approval a 2004 decision by Judge Kaplan, in which Judge Kaplan agreed with the approach taken by Seventh and Ninth Circuits.  687 F.3d at 550 (citing <u>Garcia v. Portuondo</u>, 334 F. Supp. 2d 446, 454 (S.D.N.Y. 2004)).  In that case, Judge Kaplan held–before the Second Circuit decided <u>Rivas</u>–that a successful gateway claim of actual innocence could excuse an untimely filed <i>habeas</i> petition.  He also specifically held that "new evidence" need not be "limited to that unavailable at trial, so long as it is evidence that the original fact finder did not then consider."  <u>Garcia</u>, 334 F. Supp. 2d at 454; <u>see id.</u> at 454 n.51 (collecting and comparing cases).  <u>Rivas</u>, however, did not address the "new evidence" holding of <u>Garcia</u>.

Petitioner argues, in part, that his actual innocence gateway claim contains "new" evidence because he did not discover it until February 2012.  I note that the length of the road that Petitioner drove on is a fact that was clearly in existence and available to Petitioner at the time of his guilty plea.  In addition, both the 1996 book, as well as the 2006 decision referencing it, existed well before Petitioner's plea.  Notwithstanding, the extent to which this evidence may be considered "credible" need not be addressed in light of my finding that the evidence fails to satisfy <u>Schlup</u>'s "compelling" prong.

2013) (citing <u>Rivas</u>, 687 F.3d at 545–46) (credibility evidence insufficient to suggest actual innocence).

Second, after considering all of the "new" evidence presented by Petitioner as a whole, along with other relevant information in the record (and without regard to the admissibility of the evidence), Petitioner fails to demonstrate that it is more likely than not that any reasonable juror would have reasonable doubt about his guilt. See <u>Rivas</u>, 687 F.3d at 547; <u>Doe</u>, 391 F.3d at 163. Although the "procedural actual innocence gateway exception applies even when a petitioner's conviction is, as here, the result of a guilty plea," <u>Stern v. United States</u>, No. 09 Civ. 6044(PAC)(FM), 2013 WL 71773, at *9 n.17 (S.D.N.Y. Jan. 4, 2013) (Report & Recommendation), <u>adopted by</u> 2013 WL 989382 (S.D.N.Y. Mar. 14, 2013); <u>see</u> <u>Bousley</u>, 523 at 623–24, "[t]he Second Circuit has held that a habeas court can consider a guilty plea in the context of making an actual innocence determination," <u>Bower v. Walsh</u>, 703 F. Supp. 2d 204, 227–28 (E.D.N.Y. 2010) (citing <u>Doe</u>, 391 F.3d at 168–69 and <u>Rosario v. United States</u>, 164 F.3d 729, 734 (2d Cir. 1998)). This Court's confidence in the outcome of the proceeding is not sufficiently shaken by any of the evidence identified by Petitioner. First, Petitioner pled guilty and allocuted to the reckless endangerment and aggravated unlicensed operation of a motor vehicle offenses. In particular, he admitted that he drove a Ford Explorer at a high rate of speed through a construction zone, an area where he saw flagmen stationed, while his license was suspended or revoked. (Aug. 16, 2006 T: 9–12.) Second, the flagmen told police that Petitioner ignored their directions, drove fast, and caused them to jump out of the way of his car. Third, the new evidence identified by Petitioner simply does not establish that he did not recklessly drive his vehicle through the construction zone. As noted above, at most his evidence tests the credibility of the flagmen's statements. Without more, Petitioner has not shown a probability

that a jury would conclude that he did not commit the offenses he pled guilty to.  See, e.g.,

Kennard v. Connolly, No. 10 Civ. 1562(JKS), 2014 WL 1028880, at *5 (N.D.N.Y. Mar. 14,

2014) ("the fact that [petitioner] pled guilty cuts against his actual innocence claim"); Tuitt, 2013

WL 5508385, at *3–4, 17 (taking into account petitioner's guilty plea, among other things, and

finding no compelling gateway claim of actual innocence); Desrosiers v. Phillips, No. 05 Civ.

2941(CBA)(JMA), 2006 WL 2092481, at *8 (E.D.N.Y. July 27, 2006) ("In light of his guilty

plea, petitioner is hard-pressed to show that it is more likely than not that no reasonable juror

would have convicted him.").

 Because Petitioner cannot establish a compelling claim of actual innocence, I recommend

that the untimeliness of his petition not be excused pursuant to this gateway.

## IV.  CONCLUSION

 For the reasons set forth above, I conclude–and respectfully recommend that Your Honor

conclude–that the petition should be **DISMISSED** as time-barred.  Further, because I

recommend dismissal of the petition, Petitioner's related requests for reconsideration of his

application for bail and for an evidentiary hearing are **DENIED** as moot.  (See Dkts. 17–19, 21,

24.)  Finally, because reasonable jurists would not find it debatable that Petitioner has failed to

demonstrate by a substantial showing that he was denied a constitutional right, I recommend that

no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S.

473, 483–84 (2000).

Dated: June 18, 2014
  White Plains, New York

       Respectfully Submitted,

       Paul E. Davison
       United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to those objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extensions of time to file objections must be made to Judge Seibel.

A copy of the foregoing Report and Recommendation has been sent to the following:
Joseph Goldstein
07-A-2293
Wallkill Correctional Facility
Box G Route 208
Wallkill, NY 12589